Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,835-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

WILLIAM HILTON BROYLES, III                     Plaintiff-Appellant

versus

CHELSEY MIXON BROYLES                           Defendant-Appellee

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 612,986

Honorable Brady O'Callaghan, Judge

* * * * *

AYERS, SHELTON, WILLIAMS,                  Counsel for Appellant
BENSON & PAINE, LLC
By:  Curtis R. Shelton

LAW OFFICE OF BRYCE J. DENNY
By:  Bryce J. Denny

KAMMER & HUCKABAY, LTD                      Counsel for Appellee
By:  Charles H. Kammer, III

* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**THOMPSON, J.**

Former spouses engaging in a longstanding acrimonious custody fight returned to the trial court to resolve seven pending motions and rules filed against one another over making decisions relative to their four children. After an in-chambers meeting with all parties and their counsel, the trial court appointed a parenting coordinator with a fixed term in an effort to encourage the parents to learn and practice how to co-parent for their children's benefit, granting the parenting coordinator the authority to make decisions when the parents could not agree on an issue related to their children for the period of one year. The court provided added language that in the event the parenting coordinator quit (a situation that had occurred with a previous coordinator), then the father would serve as domiciliary parent (a status he currently enjoyed) until such time as the trial court could hold a hearing on the matter. Otherwise, at the end of the parenting coordinator's term, the court would entertain possibly appointing a domiciliary parent, although such an appointment is not required.

The father objected to the trial court's judgment to the change in his current status as the domiciliary parent at the end of the parenting coordinator's term and filed a motion for new trial. The trial court denied the motion for new trial, explaining in great detail its reasoning for crafting the judgment in the manner in which it did, particularly in light of serving the best interests of the children. The father appeals both the trial court's judgment and the denial of the motion for new trial. For the following reasons, we affirm the trial court's judgment and the denial of the motion for new trial.

**FACTS AND PROCEDURAL HISTORY**

This case involves an ongoing extremely contentious divorce and custody battle. The parties, William H. Broyles, III ("Broyles") and Chelsey Mixon Broyles ("Mixon"), were married on October 28, 2008, had four children, and then began a very bitter and salacious divorce proceeding which culminated in a divorce being granted on March 12, 2019. A joint custody implementation plan was entered on November 27, 2019, which awarded the parents joint legal custody of their four minor children, with Broyles being designated as the domiciliary parent and Mixon being awarded primary physical custody of the children.

The record before this Court is significant and highlights the complete inability of these two parents to agree on the many issues that can arise when parenting four children. The trial court was presented with motions describing disagreements ranging from issues as small as details concerning the children's haircuts to significant disagreements, such as choices of which school and daycare the children would attend. The record reflects, for example, arguments about the location of school uniforms, attendance at sporting events, unilateral decisions about summer camps and mental health counseling, and the payment of a medical bill totaling less than $15. The parties became entrenched in custody warfare, and since the parties' divorce in 2018, they have filed dozens of motions with the trial court. In sum, these parties are contentious and litigious, apparently either as a strategy or in response to one.

The parties appeared before the trial court for trial on April 4, 2023, to resolve the following motions:

1) Motion for Sanctions filed by Broyles on February 3, 2021;

2) Rule for Contempt against Mixon filed by Broyles on February 3, 2021, and Response to Rule filed by Mixon on April 3, 2021;

3) Rule for Contempt filed by Mixon on May 12, 2021;

4) Motion for Rule to Show Cause filed by Broyles on July 27, 2022;

5) Motion for Rule to Show Cause for the Appointment of a Parenting Coordinator and for Authority for Counseling filed by Broyles on September 27, 2022;

6) Rule for Contempt filed by Mixon on August 1, 2022;

7) Rule to Modify Custody and Visitation filed by Mixon on January 10, 2023, and memorandum in opposition filed by Broyles on February 21, 2023.

The record reflects that the parties did not have a trial on that date, and instead had a meeting in chambers with the trial court. The record does not reflect the discussion had in chambers with the trial court, but it is clear that an agreement was made between the parties and the court regarding what issues were being submitted to the court for judgment. Thereafter, the trial court issued a judgment on May 17, 2023 (the "Judgment"), which included, but was not limited to, the following orders:

- Cole Westoff of Clint Davis Counseling was appointed as a parenting coordinator pursuant to La. R.S. 9:358.1. His job will be to assist the parties in resolving disputes and in reaching agreements regarding the children. The parenting coordinator is expressly not appointed to determine the past responsibility or fault of either parent for any challenges in the co-parenting, but instead to work prospectively to improve their co-parenting and foster the best interests of the children. The coordinator is charged to consider the costs, financial and otherwise, of any referrals made for services to outside providers.

- The term of the parenting coordinator shall be for one year from the date of the judgment; the court can extend the appointment of the parenting coordinator for additional one-year terms and may do so *sua sponte*.

3

- Cole Westoff can request that Clint Davis of Clint Davis Counseling substitute as the parenting coordinator.

- Broyles shall pay 80% and Mixon shall pay 20% of the costs of the parenting coordinator.

- The parties must use Our Family Wizard to communicate and provide access to the parenting coordinator.

- The parenting coordinator shall assist the parties in resolving disputes and in reaching agreements regarding their children.

In pertinent part, the judgment also ordered the following regarding a parenting coordinator and temporary termination of a domiciliary parent:

> It is hereby further ordered, adjudged, and decreed that, neither [Broyles] nor [Mixon] shall be designated as the domiciliary parent. Both [Broyles] and [Mixon] shall have equal decision making on matters pertaining to the minor children. To the extent any provision in the Judgment and Joint Custody Plan rendered herein on October 21, 2019 and signed on December 2, 2019 conflicts with the ability of each parent to have equal decision making on matters pertaining to the minor children, those provisions are superseded by this Judgment. Each party shall have the right to consult medical providers and schedule appointments for the minor children. The parties must make the decisions together or the matter will be submitted to the court or parenting coordinator. The parenting coordinator shall make decisions that the parents are unable to resolve.

> It is hereby further ordered, adjudged, and decreed that, should the parenting coordinator resign or otherwise terminate his role, [Broyles] shall be given domiciliary parent status on a temporary, interim basis until a hearing can be held. In such event, counsel for the parties are ordered to provide the court immediately with any and all Our Family Wizard access codes. The interim designation creates no presumption that [Broyles] will be designated the domiciliary parent after a hearing. The court also notes that any attempts by either party to delay such an expedited hearing that the court deems to be in bad faith or dilatory shall constitute grounds for modification for interim domiciliary parent status by court order.

The court further ordered that subject to the Judgment and subject to the authority granted to the parenting coordinator, the judgment and joint custody implementation plan rendered on October 21, 2019, shall remain in

4

force and effect, and the Judgment shall not be interpreted as a change of the status of the joint custody implementation plan as considered decrees. Finally, the court that ruled that all the pending motions and rules were dismissed with prejudice.

On June 2, 2023, Broyles filed a motion for new trial, contesting the Judgment and noting that "both parties submitted judgments to the court for the appointment of a parenting coordinator." The motion includes a copy of the draft judgment submitted by Broyles to the court, which compared and contrasted each party's proposed judgment to the court. Broyles argued that it was legal error for the court to change his designation as the domiciliary parent with his undecided exception of no cause of action pending. Broyles further argued that the court could not change his designation as domiciliary parent without evidence that satisfies burden set forth in *Bergeron v. Bergeron*, 492 So. 2d 1193 (La. 8/19/86).[1] Finally, he argued that it was error that he be ordered to pay 80% of the parenting coordinator, rather than making the payments split equally between him and Mixon.

A hearing on the motion for new trial was held on September 5, 2023. The trial court stated on the record at that hearing, regarding discussions in chambers: "And what I recall us agreeing is to what the language was in the Judgment, which was your fear, your concern, the reason you did not want me asserting that was if things didn't work out with Mr. Davis, that there

---

[1] "When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." *Bergeron, supra*.

would be no [domiciliary] designee." The court expressed its concern regarding Broyles, stating:

> If Mr. Broyles felt, well, you know what, I'd rather just have back my domiciliary parent status, then he could and would have the ability to basically stop cooperating with the coordinator, frustrate the coordinator to the point that he withdrew. And it would turn to the status quo ante. And it would shift it on to Ms. Mixon to start from scratch as though this agreement had never been done, the scheduling had never been done without any consequence.

The court noted that the presumption of Broyles as the domiciliary parent was preserved, and the Judgment "just says that if we end up having a new trial…that domiciliary status is going to be one of the first things I'm interested in looking at because of its often role in being contentious." The court noted, "your argument is, he is entitled to the presumption under *Bergeron* and that's not what I – I understood that you knew that I was going to do that and you were willing and he was willing to accept that consequence as a part of this consent judgment." Broyles argued that he did not consent to that portion of the judgment. The court noted that as far as splitting costs, the court's intention was to equalize the cost between the parties' disparate income levels, so that each party is paying an equal portion related to their earnings. The court denied Broyles' argument on this point.

The court issued a ruling and order denying the motion for new trial on July 20, 2023. The ruling named Clint Davis as the parenting coordinator, replacing Cole Westoff. As to the issue of domiciliary parent, the trial court wrote that it considered the status conference and the statements made therein to constitute a willingness to submit the disputes over the parenting coordinator to the court's discretion. The court found:

The only restrictions urged by Mr. Broyles' counsel regarding domiciliary parent status were that in the event the parenting coordinator arrangement collapsed, there would be no clarity who would exercise the authority until a new hearing could be held. The court, in deference to Judge Waddell's considered decree, addressed this in the judgment by awarding the domiciliary status to Mr. Broyles until a hearing could be held.

The court noted that this "precluded the uncertainty while disincentivizing any delay in coming back to court by making clear that the status would be temporary." The trial court wrote that Broyles' counsel does not dispute that the court was entrusted with the authority to decide many parameters of the parenting coordinator order, and "in the court's estimation, Mr. Broyles has submitted the matter to the court's discretion and then, upon receiving an objectionable outcome, is attempting to set aside only those portions of the court's judgment that benefit Ms. Mixon." The court thus denied Broyles' motion for new trial, and Broyles appeals both the Judgment and the denial of the motion for new trial.

**DISCUSSION**

Broyles asserts two assignments of error:

**First Assignment of Error:** The trial court erred in changing the designation of Appellant Mr. Broyles as the domiciliary parent of the children by the May 17, 2012, Judgment, which overturned and vacated the prior considered decree in this case and abrogated the burden of proof imposed by *Bergeron v. Bergeron*, 492 So. 2d 1193 (La. 1986), all without a hearing or evidence.

Broyles appeals both the Judgment and the trial court's denial of a motion for new trial. Child custody decisions are reviewed under the abuse of discretion standard. *Leard v. Schenker*, 06-1116 (La. 6/16/06), 931 So. 2d 355; *Fuller v. Fuller*, 54098 (La. App. 2 Cir. 7/21/21), 324 So. 3d 1103, *writ denied*, 21-01223 (La. 9/27/21), 324 So. 3d 621. The determination of the

7

trial court in child custody matters is entitled to great weight, and that discretion will not be disturbed on review absent a clear showing of abuse. *Id.* The principal consideration in every child custody case is the best interest of the child. *Id.* La. C.C.P. art. 1972 provides:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

This provision is peremptory; thus, a trial court is obligated to order a new trial if the conditions of Article 1972 are met. *Succession of Chisholm*, 53,771 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1056. Unless a trial court abuses its discretion in ruling on a motion for new trial, its discretion will not be overturned. *Cooper v. Patra*, 51,182 (La. App. 2 Cir. 2/15/17), 215 So. 3d 889, *writs denied* 17-0476 (La. 5/12/17), 219 So. 3d 1104 and 17-0481 (La. 5/12/17), 218 So. 3d 1105. A grant of new trial is not to be used to give the losing party a second bite at the apple without facts supporting a miscarriage of justice that would otherwise occur. *Staten v. Glenwood Regional Med. Center*, 53,220 (La. App. 2 Cir. 1/29/20), 290 So. 3d 280, *writ denied* 20-00591 (La. 9/23/20), 301 So. 3d 1184. In a ruling on a motion for new trial under Article 1972(1), the court may evaluate the evidence without favoring either party and draw its own inferences and conclusions. *Belle v. Milton*, 55,340 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1123, *writ denied*, 23-014673 (La. 2/14/24), 379 So. 3d 21.

As noted above, there has been substantial and frequent litigation in this matter, and the record reflects the contentious nature of this litigation. The difficulty the parties have had in co-parenting their four children is clear from the record, and their disagreements, over both large and small issues related to the children, frequently result in motions or rules filed with the trial court. The trial court was extensively familiar with the parties and history and level of contentiousness that has been associated with each filing and hearing before it. We note that the trial court was presented with this situation, knowing that each child custody case must be viewed on its own particular set of facts and relationships involved, with the paramount goal of reaching a decision which is in the best interests of the children. *Fuller*, *supra*.

With this particular situation in mind, the record reflects that the parties had a conference with the trial court in chambers to see if they could come to an agreement regarding the best interests of the children. Broyles admits that he agreed to the year-long parenting coordinator having the authority to make decisions when the parties could not agree. It is clear that the parties agreed to allow the trial court to render a judgment on those issues they could not come to an agreement about, as evidenced by the contrasting proposed judgments. In fact, Broyles' only concern regarding the judgment appears to be what *might* happen in the future, should the parenting coordinator quit before the year is up. Broyles takes particular issue with the following language:

> It is hereby further ordered, adjudged, and decreed that, should the parenting coordinator resign or otherwise terminate his role, [Broyles] **shall be given domiciliary parent status on a temporary, interim basis until a hearing can be held**. In

9

such event, counsel for the parties are ordered to provide the court immediately with any and all Our Family Wizard access codes. **The interim designation creates no presumption that [Broyles] will be designated the domiciliary parent after a hearing.** The court also notes that any attempts by either party to delay such an expedited hearing that the court deems to be in bad faith or dilatory shall constitute grounds for modification for interim domiciliary parent status by court order.

Broyles argues that this language is the equivalent of the trial court doing away with the burden of proof set forth in *Bergeron*, *supra*, regarding the change of domiciliary status after a considered decree. We disagree. The admirable efforts of the trial court to create an environment of equality between the parents and stand up a parenting coordinator empowered to move the parties toward each other in decisions in the best interest of the children, necessarily required neither parent have the overarching authority of being the domiciliary parent. The trial court, in the hearing on the motion for new trial, specifically stated that in deference to the considered decree, *if* the parenting coordinator were to quit before the year-long term was up, Broyles would be the domiciliary parent, as required by the considered decree. However, considering the clear animosity of the parties and their lack of success in co-parenting, the trial court let the parties know that a hearing would be scheduled and held in order to "preclude the uncertainty while disincentivizing any delay in coming back to court by making clear that the status [of domiciliary parent] would be temporary." It seems reasonable that if the hearing should come to pass in the future, the trial court would then take witnesses and hear evidence regarding domiciliary status prior to any change in that status, thus satisfying the *Bergeron* burden of proof.

As it stands, the record is clear that Broyles consented to the appointment of the parenting coordinator for a year, during which time both parents would submit to the authority of the parenting coordinator. The record also reflects that while the parties did not consent to other portions of the judgment, they did consent to have the matter submitted to the trial court's discretion. While the judgment reached by the trial court was not a "consent judgment" it was, nonetheless, a judgment on matters which the parties consented to submit to the trial court. The trial court spoke at length during the hearing on the motion for new trial and in its written reasons for judgment about why it prepared the judgment in the way that it did, including that "the domiciliary status is going to be one of the first things I'm interested in looking at because of its often role in being contentious." We cannot say that the trial court's Judgment or denial of the motion for new trial was an abuse of discretion. This assignment of error is without merit.

**Second Assignment of Error:** The trial court erred in changing the designation of Appellant Mr. Broyles as the domiciliary parent of the children without ruling on appellant's pending Preliminary Exceptions of No Cause of Action filed on February 16, 2023.

As to Broyles' second assignment of error, the Judgment provided that: "all of the aforementioned motions and rules **and all other motions and rules pending herein** are hereby dismissed with prejudice." Although not listed among the pending motions and rules in the Judgment, Broyles' preliminary exception of no cause of action filed on February 16, 2023 was pending as of the date of the Judgment, as it had been filed in response to two of the pending motions that are listed in the Judgment, *i.e.* Mixon's Rule

11

for Contempt filed on May 12, 2021 and her January 10, 2023 Rule to Modify Custody and Visitation.

The trial court stated, and it appears clear from the record, that the parties intended to submit to the court's judgment and dismiss their pending motions with prejudice. The trial court clearly intended, with the parties' consent, to craft a judgment that would resolve their issues in a way that would encourage them to peacefully co-parent together, as is in the best interests of their children. The result of their submission to this judgment was the dismissal of all their pending motions, including Broyles' preliminary exception of no cause of action. The record reflects that in the contested, proposed judgment submitted by Broyles to the trial court, he did not contest that portion of the proposed judgment that dismissed all pending rules and motions with prejudice. We cannot say that the trial court's dismissal of all pending rules and motion with prejudice, including Broyles' exception, was manifestly erroneous. Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment and denial of the motion for new trial is affirmed. Costs of this appeal are assessed to William Hilton Broyles, III.

**AFFIRMED.**